UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>EDWIN VAZQUEZ,<br><br>Defendant. | 13 Cr. 869-1 (KPF)<br>19 Cr. 540-1 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Edwin Vazquez, who is currently incarcerated at the Federal Correctional Institution McDowell in Welch, West Virginia ("FCI McDowell"), has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), citing the ongoing COVID-19 pandemic, his pre-existing medical conditions, and the conditions of his confinement.  The Government opposes the motion.  As set forth in the remainder of this Order, the Court denies Mr. Vazquez's motion, and requests that the Clerk of Court docket this Order in both of his criminal cases.[1]

---

[1]  Mr. Vazquez's motion was filed only in the case originally assigned to this Court, No. 19 Cr. 540, where the Court imposed an eight-month term of imprisonment.  However, the motion appeared to address Mr. Vazquez's aggregate term of imprisonment, which includes the 54-month term he received from Judge Thomas P. Griesa in Case No. 13 Cr. 869, and the Government's opposition similarly appeared to address the aggregate term of imprisonment.  As such, the Court *sua sponte* requested the transfer of Judge Griesa's case to it, and will resolve the motion as though it were made in both cases.  References to the docket in Case No. 13 Cr. 869 will be cited using the convention "2013 Dkt. #[  ]," while references to the docket in Case No. 19 Cr. 540 will be cited using the convention "2019 Dkt. #[  ]."

Separately, the parties have observed that at the time the instant motion was filed, Mr. Vazquez had a pending appeal of his sentence in the 2019 case at the United States Court of Appeals for the Second Circuit.  (*See* 2019 Dkt. #32 at 3; 2019 Dkt. #33 at 1).  As both sides have acknowledged, Federal Rule of Criminal Procedure 37(a)(2) permits district courts to deny motions in this procedural setting.  In addition, the appeal was resolved by Order dated December 17, 2021, and the mandate has now been returned to this Court.  (2019 Dkt. #34).

## BACKGROUND

### A.    The 2013 Indictment

On October 3, 2013, Mr. Vazquez and two co-defendants were charged in a sealed complaint with mail fraud, conspiracy to commit mail fraud, and aggravated identity theft, in violation of 18 U.S.C. §§ 1341, 1349, and 1028A. (2013 Dkt. #1).[2]  Mr. Vazquez was arrested one week later, on October 9, 2013, and presented in the United States District Court for the Northern District of Georgia.  (2013 Dkt. #7).  One month later, on November 6, 2013, Mr. Vazquez and his co-defendants were indicted on the same three charges.  (2013 Dkt. #9).  The case was originally assigned to Judge Lewis A. Kaplan, and then reassigned to Judge Griesa.  (2013 Dkt., Minute Entry for March 19, 2014).

On October 10, 2014, Mr. Vazquez pleaded guilty to conspiracy to commit mail fraud and aggravated identity theft, in violation of 18 U.S.C. §§ 1349 and 1028A.  (2013 Dkt., Minute Entry for October 10, 2014).  Mr.

---

[2]    The Presentence Investigation Report ("PSR") in the 2019 case describes the offense conduct in the 2013 case as follows:

> [B]etween October 2007 and at least May 2010, in the Southern District of New York and elsewhere, the defendant conspired with others, including his wife, to commit mail fraud.  During the conspiracy he possessed and used the names and personal identifying information of others to obtain automobile insurance payments.  The defendant caused a loss of between $200,000 and $400,000, and the offense involved sophisticated means.  He and his co-conspirators stole the identities of third parties to obtain automobile insurance policies.  Members of the conspiracy then posed as policyholders, claimed that they had been involved in automobile accidents, and ultimately caused the insurance companies to make payments on those claims.  The government contends the defendant used at least some of the proceeds of the fraud to fund businesses he opened, including a catering hall and nightclub.

(2019 PSR ¶ 30).

Vazquez's guilty plea was entered pursuant to a written plea agreement with the Government in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 54 to 61 months' imprisonment, with the aggravated identity theft count requiring a consecutive term of 24 months' imprisonment to whatever term was imposed on the mail fraud conspiracy count.  (*See* 2013 Dkt. #51 at 1 (defense sentencing submission)).

Sentencing in the 2013 case took place on November 9, 2015.  (2013 Dkt. #58 (sentencing transcript ("2013 Sent. Tr."); *see also* 2013 Dkt. #56 (judgment)).  At sentencing, the defense sought a non-Guidelines sentence of time served on the mail fraud conspiracy count, followed by 24 months' imprisonment on the aggravated identity theft count, while the Government sought a sentence within the applicable Guidelines range.  (Dkt. #51 (defense sentencing submission), 53 (Government sentencing submission)).  Ultimately, Judge Griesa imposed an aggregate term of 54 months' imprisonment, comprising a 30-month term on the conspiracy count and a 24-month consecutive term on the aggravated identity theft count.  (2013 Dkt. #56).  In so doing, Judge Griesa offered the following sentencing rationale:

> It is a sad thing to impose a prison sentence on someone who has small children, and I regret exceedingly that that has to be done, but it has to be done.
>
> In the first place, there is a mandatory sentence on Count Three of 24 months that must be imposed by the Court.

> The question is, on Count One, is there an additional sentence that the Court will impose so that the term of imprisonment is more than 24 months?
>
> In my view, the degree of fraudulent conduct here is such that the Court believes and concludes that a prison sentence is required on Count One; and, consequently, I am imposing a sentence of 30 months' prison on Count One and 24 months on Count Three, and those sentences must, according to the law, be served consecutively. So the total sentence to be served is 54 months.

(2013 Sent. Tr. 15). Judge Griesa granted the defense's motion to have Mr. Vazquez surrender to his designated facility on or before January 19, 2016. (2013 Sent. Tr. 17; *see also* 2013 Dkt. #55 (Order to Surrender)).

Twelve days after his sentencing in the 2013 case, Mr. Vazquez was arrested in Georgia on charges of sexual battery against his wife. (*See* 2013 Dkt. #64 (transcript of December 10, 2015 conference) at 2). Judge Griesa scheduled a conference to take place on December 10, 2015, and though counsel for both sides appeared, Mr. Vazquez did not. (*Id.*). The conference was rescheduled for December 11, 2015, and then again for December 14, 2015, but Mr. Vazquez failed to appear for either conference. (2013 Dkt. #66 (transcript of December 11, 2015 conference), 68 (transcript of December 14, 2015 conference)). Mr. Vazquez also failed to appear for his January 19, 2016 surrender date, and Judge Griesa issued a warrant for his arrest on March 18, 2016. (2013 Dkt. #62).

## B.    The 2019 Indictment

On July 29, 2019, Mr. Vazquez was indicted for failing to appear on his surrender date, in violation of 18 U.S.C. § 3146. (2019 Dkt. #1). Two days

4

later, on July 31, 2019, Mr. Vazquez was arrested in the Northern District of Georgia.  (2019 Dkt. #2).  He was presented in this District on August 14, 2019.  (2019 Dkt. #4).

On October 29, 2019, Mr. Vazquez entered a plea of guilty to the sole count of the 2019 Indictment.  (2019 Dkt. #10 (plea transcript)).  Once again, Mr. Vazquez's plea was entered pursuant to a plea agreement with the Government; this time, the parties stipulated that the applicable Guidelines range was 12 to 18 months' imprisonment.  (2019 PSR ¶ 4).  Sentencing on the 2019 Indictment was held on March 4, 2020.  (2019 Dkt. #16 (judgment)).  This Court imposed a below-Guidelines sentence of eight months' imprisonment, balancing the seriousness of Mr. Vazquez's failure to appear with the absence of record evidence of active efforts to hide from law enforcement and the likelihood of deportation.

Mr. Vazquez filed a notice of appeal from his sentence in the 2019 case to the United States Court of Appeals for the Second Circuit.  (2019 Dkt. #17 (notice of appeal)).  Ultimately, by Order dated December 17, 2021, the Court of Appeals granted defense counsel's motion to withdraw as counsel pursuant to *Anders* v. *California*, 386 U.S. 738 (1967), as well as the Government's cross-motion for summary affirmance.  (*See United States* v. *Vazquez*, No. 20-1039, Dkt. #69).  While his appeal was pending, Mr. Vazquez filed, and then withdrew, a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (2019 Dkt. #20, 21).

By Order dated December 7, 2020, this Court appointed counsel to assist Mr. Vazquez in filing a compassionate release motion.  (2019 Dkt. #26).  Mr. Vazquez filed a counseled motion for compassionate release on February 4, 2021, which motion was supplemented by letter dated April 22, 2021.  (2019 Dkt. #29, 30).  The Government opposed Mr. Vazquez's motion by letter brief dated May 6, 2021.  (2019 Dkt. #32).  Mr. Vazquez then filed a counseled reply dated May 28, 2021.  (2019 Dkt. #33).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order).  "The defendant has the burden to show he is entitled to a sentence

reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has very recently summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed … to provide the defendant with … correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing factors that may constitute "extraordinary and compelling reasons").

## DISCUSSION

The parties do not dispute that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied.  (*See* 2019 Dkt. #29 at Ex. A (denial form)). The Court thus proceeds to consider whether Mr. Vazquez has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has not.

As noted, Mr. Vazquez argues that the conditions of his incarceration at FCI McDowell place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the congregate setting, his existing medical conditions, and the inability of prison staff to handle an outbreak of the virus.  Courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19

8

pandemic and the risks of its transmission at prisons.  *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Bush*, No. 17 Cr. 611-4 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21, 2021) ("Courts have granted modified sentences in light of COVID-19 for inmates with illnesses or injuries that make them particularly vulnerable to COVID-19.  By contrast, in cases where an inmate does not suffer such illnesses or injuries, courts in this district have denied requests for compassionate release." (internal citations omitted)).

Recognizing the expansive discretion identified by the Second Circuit in *Brooker*, this Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant. In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the

term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Vazquez has not demonstrated the existence of extraordinary and compelling circumstances in his case.  Mr. Vazquez is 43 years old, which places him at a slightly elevated risk of contracting or dying from COVID-19. *See* COVID-19 Weekly Cases and Deaths per 100,000 Population by Age, Race/Ethnicity, and Sex, CENTERS FOR DISEASE CONTROL AND PREVENTION ("CDC"), https://covid.cdc.gov/covid-data-tracker/#demographicsovertime (last visited January 27, 2022).  Mr. Vazquez adds, however, that he has various comorbidities that exacerbate his risk, including primary hypertension.  (2019 Dkt. #29 at 5 and Ex. B (medical records indicating infectious gastroenteritis, colitis, dermatophytosis, major depressive disorder, post-traumatic stress disorder, and primary hypertension)).

The CDC has periodically revised its analysis of comorbidities over the course of the COVID-19 pandemic, now focusing on conditions that place individuals at a higher risk of "get[ting] severely ill from COVID-19."  *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 27, 2022); *see also* CDC, For People Living in Prisons and Jails,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (last visited January 27, 2022).  Pulmonary hypertension is listed among those conditions, but that is not the form of hypertension with which Mr. Vazquez has been diagnosed.  (2019 Dkt. #29 at Ex. B).

The Court has reviewed with care Mr. Vazquez's BOP medical records, which make clear that Mr. Vazquez has worked successfully with BOP medical professionals at several facilities to address his medical and mental health issues.  There is nothing to suggest that Mr. Vazquez has been unable to care for himself or has been neglected by BOP medical personnel.  Instead, Mr. Vazquez appears to have received appropriate medical care while incarcerated. *See, e.g.*, *Brady*, 2020 WL 2512100, at *3-4 (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *United States* v. *Garcia*, No. 18 Cr. 802 (CM), 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, hypertension, and heart conditions housed in facility with 40 documented cases of virus).

The Court also perceives a disconnect between Mr. Vazquez's professed concern about contracting severe illness from COVID-19 and his refusal of the COVID-19 vaccine when it was offered to him.  (*See* 2019 Dkt. #32 at 1, 6; 2019 Dkt. #33 at 2 n.1).  "In such instances, courts in this district and elsewhere have nearly uniformly denied compassionate release sought for medical reasons." *United States* v. *Robinson*, No. 17 Cr. 611-7 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (citing *United States* v. *King*, No. 16 Cr.

11

478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021)) (citation omitted); *see also United States* v. *Mack*, No. 19 Cr. 27 (PGG), 2021 WL 4148729, at *2 (S.D.N.Y. Sept. 13, 2021) ("Mack has also not shown that extraordinary and compelling circumstances justify his release.  While Mack suffers from medical conditions that place him at increased risk of severe illness from COVID-19, he refused the COVID-19 vaccine when it was offered to him."); *United States* v. *Ellison*, No. 18 Cr. 834-9 (PAE), 2021 WL 2821108, at *5 (S.D.N.Y. July 7, 2021) ("[A]lthough the choice is Ellison's whether to become vaccinated, he undisputedly has the ability to do so and thereby further limit his COVID-19 risk."); *United States* v. *McIntosh*, No. 12 Cr. 72 (ER), 2021 WL 1660682, at *4 (S.D.N.Y. Apr. 28, 2021) ("McIntosh was offered the Pfizer vaccine in March 2021 and declined it....  McIntosh's access to the highly effective Pfizer vaccine mitigates any extraordinary and compelling health reasons justifying compassionate release." (citing *United States* v. *Bryant*, No. 06 Cr. 17 (LTS), 2021 WL 738838, at *2 (S.D.N.Y. Feb. 24, 2021))) (citation omitted); *United States* v. *Bullock*, No. 18 Cr. 528 (JMF), 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021) ("Mr. Bullock cannot satisfy his burden of showing that relief is warranted based on the fact that he was offered, and he refused, a COVID-19 vaccine.").

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities.  *See, e.g.*, *United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093

(S.D.N.Y. Sept. 1, 2020).  To that end, this Court has scrutinized the BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last visited January 27, 2022), as well as the BOP's listing of confirmed cases among inmates and staff at each facility.  As of the date of this Order, the BOP has identified 11 current cases of COVID-19 among inmates at FCI McDowell and 2 current cases of COVID-19 among staff there.  On balance, this Court concludes that the danger that Mr. Vazquez faces from infection with COVID-19, even accounting for his proffered medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Vazquez's motion.  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).  Mr. Vazquez has a lengthy criminal history that involves two convictions for fraud, not to mention his repeated refusals to abide by court orders requiring his appearance.  And while

13

claiming to have accepted responsibility, and receiving a below-Guidelines sentence from this Court as a result, Mr. Vazquez continues to challenge the Court's sentence in post-conviction proceedings.  The Court has given serious consideration to the information presented by Mr. Vazquez concerning his clean disciplinary record, his family support, and the likelihood of deportation. However, the latter two factors were considered by this Court and Judge Griesa in imposing sentence, and this Court has concluded that information about Mr. Vazquez's post-surrender conduct and the conditions of confinement during the pandemic does not warrant a further reduction in sentence. Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Vazquez's application based on its consideration of the § 3553(a) factors.[3]

---

[3]     To the extent that he has not otherwise done so, Mr. Vazquez can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  The decision to grant any such relief, however, is reserved to the discretion of the BOP.

## CONCLUSION

For the foregoing reasons, Defendant Edwin Vazquez's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to file this Order in both cases listed in the caption and to terminate the motions at docket entries 29 and 32 in the 2019 case.

SO ORDERED.

Dated:    January 27, 2022
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge