UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 13 Cr. 869-1 (KPF) |
| EDWIN VAZQUEZ, | 19 Cr. 540-1 (KPF) |
| Defendant. | **OPINION AND ORDER** |
| EDWIN VAZQUEZ, | 22 Civ. 2961 (KPF) |
| Movant, | |
| -v.- | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

KATHERINE POLK FAILLA, District Judge:

In an Order dated January 27, 2022 (the "January 2022 Order" or the "Order"), this Court denied the motion of Edwin Vazquez for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *United States* v. *Vazquez*, Nos. 13 Cr. 869-1 (KPF) and 19 Cr. 540-1 (KPF), 2022 WL 269149 (S.D.N.Y. Jan. 27, 2022) ("*Vazquez I*"). Mr. Vazquez did not appeal from the Court's decision. Instead, he filed a motion to vacate, set aside, or correct his sentences in two criminal cases in this District pursuant to 28 U.S.C. § 2255 and, more recently, filed a second, counseled motion for compassionate release. For the reasons set forth in the remainder of this Opinion, the Court denies Mr. Vazquez's Section 2255 motion, and grants in part his compassionate release motion.

## BACKGROUND

The Court presumes familiarity with the procedural history of Mr. Vazquez's two criminal prosecutions in this District, which history was outlined in its prior decision. *See Vazquez I*, 2022 WL 269149, at *1-3. In the 2013 case, Mr. Vazquez was indicted on fraud and aggravated identity theft charges on November 6, 2013; he pleaded guilty to certain of those charges on October 10, 2013, pursuant to a written plea agreement with the Government; and he was sentenced principally to an aggregate term of 54 months' imprisonment on November 9, 2015. (Dkt. #9, 30, 56).[1] Mr. Vazquez had been released on bail shortly after his indictment, and had been given a surrender date of January 19, 2016, during his sentencing proceeding. (Minute Entry for November 9, 2015). Mr. Vazquez failed to appear at several bail hearings convened by then-District Judge Thomas P. Griesa after his sentencing; on March 18, 2016, when Mr. Vazquez failed to surrender to serve his sentence, Judge Griesa issued a bench warrant. (Dkt. #62). Mr. Vazquez remained a fugitive for the next several years.

On July 29, 2019, Mr. Vazquez was indicted for failure to appear. (19 Cr. 540 Dkt. #1). He was arrested in the United States District Court for the Northern District of Georgia on July 31, 2019, and thereafter transferred to this District. (19 Cr. 540 Dkt. #2). On October 29, 2019, Mr. Vazquez entered a plea of guilty to the 2019 indictment without a plea agreement. (19 Cr. 540

---

[1]     Unless otherwise indicated, references to docket entries are to the docket in Case No. 13 Cr. 869 (KPF).

Dkt. #10 (transcript)).  On March 3, 2020, this Court sentenced Mr. Vazquez to a term of 8 months' imprisonment, which term it ordered to run consecutively to the 54-month sentence imposed in the 2013 case.  (19 Cr. 540 Dkt. #16 (judgment)).  Mr. Vazquez filed a notice of appeal from his sentence on March 20, 2020 (19 Cr. 540 Dkt. #17); on December 17, 2021, the Second Circuit Court of Appeals granted defense counsel's motion to withdraw as counsel pursuant to *Anders* v. *California*, 386 U.S. 738 (1967), as well as the Government's cross-motion for summary affirmance (19 Cr. 540 Dkt. #34).[2]

In November 2020, Mr. Vazquez moved for the appointment of counsel in the 2019 case to facilitate the filing of a motion for compassionate release.  (19 Cr. 540 Dkt. #23, 25).  In December 2020, the Court granted Mr. Vazquez's motion and appointed Nathaniel Z. Marmur pursuant to the Criminal Justice Act (the "CJA") to assist with his compassionate release motion.  (19 Cr. 540 Dkt. #26, 27).  The motion was filed in the 2019 case on February 4, 2021.  (19 Cr. 540 Dkt. #29).  After the motion was fully briefed and under advisement, the Court arranged for the 2013 case to be transferred to it and then denied the motion with respect to both cases on January 27, 2022.  (19 Cr. 540 Dkt. #35).

Within two months of the issuance of the January 2022 Order, the Court received a request for Mr. Vazquez for assistance in filing a motion pursuant to 28 U.S.C. § 2255; because the request appeared to include information subject

---

[2]    In July 2020, during the pendency of his appeal in the 2019 case, Mr. Vazquez filed a motion under 28 U.S.C. § 2255.  (19 Cr. 540 Dkt. #20).  However, one month later, the Court granted Mr. Vazquez's request to withdraw that motion.  (19 Cr. 540 Dkt. #21).

to the attorney-client privilege, the Court declined to review the request, and instead submitted a copy of filing instructions, along with a warning about waiving the privilege, to Mr. Vazquez. (Dkt. #71). Mr. Vazquez then filed a Section 2255 motion addressing both of his criminal cases on or about March 24, 2022, which motion was docketed on April 7, 2022. (Dkt. #72). Noting that Mr. Vazquez had been sentenced in his two cases in November 2015 and March 2020, respectively, the Court issued an order to show cause why his motion should not be dismissed as untimely. (Dkt. #73). Mr. Vazquez responded by requesting appointment of counsel, which request the Court denied on May 3, 2022, finding the timeliness issue to be a straightforward one. (Dkt. #74).

On July 13, 2022, the Court docketed both a completed privilege waiver form and a declaration from Mr. Vazquez in response to the Court's order to show cause. (Dkt. #76-77). In his declaration, Mr. Vazquez averred that his attorney in the 2013 case, David Gordon, had neither showed nor given him a copy of his Presentence Investigation Report (the "2013 PSR"); that Mr. Gordon had not responded to his post-sentencing communications; and that prison officials had prevented him from receiving a copy of the 2013 PSR while incarcerated. (Dkt. #76).[3] Mr. Vazquez also suggested that he had been counseled to wait for permission from the Court before filing any motion. (*Id.*).

---

[3]     According to Mr. Vazquez, had he reviewed the 2013 PSR, he would have noticed an error in it, namely, its statement that Mr. Vazquez is a naturalized U.S. citizen. (Dkt. #72 at 5). What is more, Mr. Vazquez claims that had he known that he would be subject to deportation, he would not have pleaded guilty. (*Id.*). However, the Government notes that Mr. Vazquez advised the Probation Office during his interview in the 2013 case that he was a naturalized citizen. (Dkt. #82 at 5). In addition, when

4

The Court ordered a response from Mr. Gordon (Dkt. #78), which response was submitted on July 21, 2022 (Dkt. #79).  In relevant part, Mr. Gordon stated that (i) he had transmitted copies of both initial and final disclosures of the 2013 PSR to his client; (ii) he had reviewed the 2013 PSR with Mr. Vazquez before the sentencing proceeding; (iii) he had discussed Mr. Vazquez's right to appeal with him after the sentencing in the 2013 case (and had been present with Mr. Vazquez during the sentencing proceeding when the prosecutor discussed this right); (iv) Mr. Vazquez had never expressed a desire to appeal from either his conviction or sentence in the 2013 case; and (v) Mr. Gordon had "never refused calls from [Mr. Vazquez], never failed to respond to letters or emails from him, nor failed to forward to him any requested documents." (*Id.*).  The Government filed its opposition submission to Mr. Vazquez's Section 2255 motion on August 22, 2022 (Dkt. #82), and Mr. Vazquez's reply was docketed on September 13, 2022 (Dkt. #84; *see also* Dkt. #83, 85 (supplemental letters)).

In November 2022, Mr. Vazquez requested the appointment of counsel to assist with the preparation of a second compassionate release motion, this one predicated on medical issues involving his heart, kidneys, and chest.  (Dkt. #86).  The Court appointed Florian Miedel pursuant to the CJA to represent

---

pleading guilty in the 2019 case, this Court advised Mr. Vazquez of the adverse immigration consequences that could follow if he were not a U.S. citizen, including removal from this country.  (19 Cr. 540 Dkt. #12 at 20-23).  At that time, Mr. Vazquez continued with his guilty plea, and gave no indication of any desire to vacate his prior plea.  (*Id.*).

Mr. Vazquez by endorsement dated December 1, 2022.  (Dkt. #87).[4]  Mr.

Vazquez filed his opening counseled submission on February 5, 2023 (Dkt.

#93), and the Government filed its response in opposition on February 27,

2023 (Dkt. #94).

## DISCUSSION

**A.    The Court Denies Mr. Vazquez's Section 2255 Motion As Untimely**

    **1.    Applicable Law**[5]

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), a motion under 28 U.S.C. § 2255 must be filed within one year of

the latest of four benchmark dates: (i) when the judgment of conviction

becomes final; (ii) when a government-created impediment to making such a

motion (which impediment is in violation of the Constitution or federal law) is

removed; (iii) when the right asserted is initially recognized by the Supreme

Court and made retroactively applicable to cases on collateral review; or (iv)

when the facts supporting the claims could have been discovered through the

exercise of due diligence.  28 U.S.C. § 2255(f)(1)-(4).  The deadline is not

jurisdictional, but rather is subject to equitable tolling in appropriate cases.

*Green* v. *United States*, 260 F.3d 78, 82 (2d Cir. 2001); *see also Holland* v.

*Florida*, 560 U.S. 631, 645 (2010).  The Second Circuit has emphasized that

"[e]quitable tolling applies only in the rare and exceptional circumstance."

---

[4]    The Court commends Mr. Miedel and Mr. Marmur for their helpful submissions in these cases.

[5]    Courts use the terms "petitioner" and "movant" interchangeably in the Section 2255 setting, and this Court will as well.

*Smith* v. *McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotations and modifications omitted).  In particular, "the petitioner must establish that 'extraordinary circumstances prevented him from filing his petition on time,' and that he 'acted with reasonable diligence throughout the period he seeks to toll.'" *Doe* v. *Menefee*, 391 F.3d 147, 159 (2d Cir. 2004); *see also Holland*, 560 U.S. at 649; *Dillon* v. *Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (noting that the Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling").

  "Whether a circumstance is extraordinary is based not on 'how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather[,] how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Dillon*, 642 F.3d at 363 (quoting *Diaz* v. *Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).  Moreover, the petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."  *Valverde* v. *Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *see generally Harper* v. *Ercole*, 648 F3d 132, 137-38 (2d Cir. 2011); *Sanchez* v. *United States*, No. 10 Cr. 392-16 (CS), 2021 WL 2481836, at *1 (S.D.N.Y. June 17, 2021).

2.    **Analysis**

Mr. Vazquez's conviction in the 2013 case became final on November 24, 2015, when his time to file a notice of appeal expired.  This is because Mr. Vazquez had fourteen days after the entry of judgment on November 10, 2015, to file a notice of appeal, *see* Fed. R. App. P. 4(b)(1)(A)(i), and an "unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires," *Moshier* v. *United States*, 402 F.3d 116, 118 (2d Cir. 2005).  Mr. Vazquez's conviction in the 2019 case, by contrast, became final on March 17, 2022, when his time to file a petition for a writ of certiorari expired.  *See* Sup. Ct. R. 13(1) (specifying deadline of 90 days after entry of judgment); *Clay* v. *United States*, 537 U.S. 522, 525 (2003) (When a defendant loses on direct appeal and does not appeal to the Supreme Court, the "judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.").  As noted, Mr. Vazquez filed his Section 2255 motion, listing both cases, on March 24, 2022.

At first blush, this timeline would suggest that Mr. Vazquez's Section 2255 motion is untimely as to the 2013 case, but timely as to the 2019 case. Significantly, however, a careful review of Mr. Vazquez's motion makes plain that all of his arguments for vacatur concern the 2013 case, and not the 2019 case.  In particular, Mr. Vazquez argues that:

- He was not able to view the 2013 PSR until 2022, at which time he learned that it contained incorrect information, including incorrect information about his citizenship, that affected both his plea and his

sentencing (Dkt. #72 at 2, 5; Dkt. #76 at 1; Dkt. #83; Dkt. #84 at 7);

- He had insufficient contact with his attorney in the 2013 case, David Gordon (Dkt. #72 at 3; Dkt. #83; Dkt. #84 at 1-2. 7; Dkt. #85);

- Mr. Gordon promised Mr. Vazquez that he would request a hearing at which responsibility for each of the checks at issue would be allocated among the co-conspirators, and, further, that Mr. Vazquez would be sentenced to no more than 24 months' imprisonment in the 2013 case (Dkt. #72 at 4, 7); and

- Mr. Gordon did not advise Mr. Vazquez that he would be responsible for restitution in the amount of the total losses attributable to the conspiracy in the 2013 case (Dkt. #72 at 8).

By contrast, Mr. Vazquez proffered no claims regarding his conviction or sentence in the 2019 case. (*See, e.g.*, Dkt. #85 at 1-2 (acknowledging that the Court made sure that Mr. Vazquez "understood everything" during his plea and sentencing proceedings)).[6] Because Mr. Vazquez is not challenging his 2019 conviction or sentencing, the timeliness of his Section 2255 motion with respect to that conviction is irrelevant. The Court focuses instead on the motion as it pertains to Mr. Vazquez's conviction and sentencing in the 2013 case, and on this point, it concludes that, absent a basis for tolling, the motion is untimely. The Court therefore considers Mr. Vazquez's proffered bases for tolling.

---

[6]     In responding to the Court's order to show cause, Mr. Vazquez mused that his attorney in the 2019 case, Barry Weinstein, "was no[] help at all," but even then, Mr. Vazquez focused his criticism on Mr. Weinstein's failure to show Mr. Vazquez the paperwork from his 2013 case. (Dkt. #76 at 3). Even reading Mr. Vazquez's papers liberally, the Court has identified no challenges to the plea or sentence in the 2019 case.

To begin, Mr. Vazquez lays blame for his delay squarely at the feet of his prior counsel, David Gordon, who, it is claimed, failed to provide the requisite paperwork to Mr. Vazquez, failed to file a notice of appeal, and led him to believe that he needed to wait for Court approval before filing a challenge to his conviction.  (Dkt. #72 at 14; Dkt. #76 at 3; Dkt. #83; Dkt. #84).  The undersigned did not preside over Mr. Vazquez's sentencing, but has reviewed the sentencing transcript.  (Dkt. #58).  While Judge Griesa did not specifically ask Mr. Vazquez if he had received and reviewed the 2013 PSR, he did confirm with Mr. Gordon on the record that Mr. Gordon had reviewed the PSR with his client, and Mr. Vazquez said nothing to the contrary.  (*See, e.g.*, *id.* at 2; *see also id.* at 13 (discussing information in the 2013 PSR); Dkt. #79 at 1-2 (Mr. Gordon discussing review of PSR with his client)).  Similarly, while Judge Griesa declined to advise Mr. Vazquez specifically of his right to appeal, citing Mr. Vazquez's waiver of his right to appeal, Mr. Vazquez was nonetheless advised of his appellate rights by the prosecution (Dkt. #58 at 17-18) and by Mr. Gordon (Dkt. #79 at 2).[7]

On this record, the Court can easily credit Mr. Gordon's sworn statements that Mr. Vazquez did not express an interest in appealing his conviction or sentence.  (Dkt. #79 at 2-3).  Conversely, accepting Mr. Vazquez's argument that he was advised by Mr. Gordon to wait until they had received

---

[7]     Relatedly, to the extent that Mr. Vazquez is claiming that he failed to file an appeal because Mr. Gordon advised him that his appellate waiver likely foreclosed that option (Dkt. #72 at 14), the Court sees no error in that advice, much less an error so egregious as to warrant equitable tolling.

permission to appeal from Judge Griesa would require this Court to overlook several key events in the 2013 case. Two weeks after his sentencing in that case, Mr. Vazquez was arrested in Georgia for attempted sexual assault. (Dkt. #64 at 2). Judge Griesa convened a hearing to review Mr. Vazquez's bail conditions on December 10, 2015, and Mr. Vazquez failed to appear. (*Id.* at 2-3). Understanding that Mr. Vazquez was en route from Georgia, Judge Griesa adjourned the proceedings one day, until December 11, 2015, at which point Mr. Vazquez again failed to appear. (Dkt. #66 at 2-3; *see also id.* at 8-9 (Mr. Gordon reading into the record an email from Mr. Vazquez purporting to explain why he had not appeared in court)). Judge Griesa then adjourned the proceedings until December 14, 2015, to give Mr. Vazquez one final chance to appear. (Dkt. #68). Mr. Vazquez failed to do so, and Judge Griesa issued a warrant for his arrest. (Dkt. #62).

Later in the day on December 14, 2015, Mr. Gordon emailed Mr. Vazquez concerning the warrant; the two then discussed Mr. Vazquez's upcoming surrender date of January 19, 2016, and the possibility that Mr. Vazquez could be remanded if he surrendered to law enforcement authorities prior to that date. (Dkt. #79 at 3). At no point in any of these communications did Mr. Vazquez express an interest in appealing from his conviction and sentence. Instead, he focused on his surrender date. Ultimately, Mr. Vazquez did not surrender to the designated BOP facility on January 19, 2016, but rather remained a fugitive for more than three years, until he was arrested in July 2019. (*See* 19 Cr. 540 Dkt. #14 ("2019 PSR") at 1). Mr. Vazquez did not

communicate with Mr. Gordon again until July 2019, when his sister emailed Mr. Gordon to advise him of Mr. Vazquez's arrest.  (Dkt. #85 at 6).  And at no time during the prosecution of the 2019 case did Mr. Vazquez ever suggest to this Court that he had ever attempted to appeal from, or was awaiting court permission to appeal, the 2013 case.

"[A]ttorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," unless "an attorney's behavior [is] so outrageous or so incompetent as to render it extraordinary." *Baldayaque* v. *United States*, 338 F.3d 145, 150 (2d Cir. 2003); *accord Doe*, 391 F.3d at 159-60; *Valverde*, 224 F.3d at 133-34.  Even then, the petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [P]etitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Hizbullahankhamon* v. *Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also United States* v. *Wright*, 945 F.3d 677, 685 (2d Cir. 2019) ("Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling.").  In the context of attorney errors, petitioners are not obligated to demonstrate "maximum feasible diligence," but rather "reasonable diligence." *Id.* (citing *Holland*, 560 U.S. at 653).

Here, Mr. Vazquez has demonstrated neither attorney error on Mr. Gordon's part nor reasonable diligence on his own part.  Instead, the record of

the 2013 and 2019 cases makes clear that Mr. Vazquez had no interest in appealing from or otherwise challenging the 2013 case until after his compassionate release motion had been denied. More pointedly, for three and one-half years of that period, Mr. Vazquez "ghosted" his lawyer and the Court after failing to appear for the bail review hearings or his surrender date. In short, any acts or omissions on the part of Mr. Gordon are insufficient to warrant equitable tolling on these facts.

As a separate basis for tolling, Mr. Vazquez suggests that he was burdened by his own physical and mental health issues during the relevant time period, as well as illness and death befalling several of his family members. (Dkt. #76 at 2; Dkt. #83; Dkt. #84 at 3; Dkt. #85). Beginning with his physical issues, Mr. Vazquez adverts to an assault in December 2015 that left him with a "big cut on my left eye and my chin." (Dkt. #76 at 3). In other submissions, he refers to post-sentencing assaults (*see* Dkt. #83 at 1; Dkt. #84 at 3 (referring to "unreported assaults")), as well as certain chronic medical conditions (*see* Dkt. #85 at 2 (noting blood pressure, lung, and kidney problems)). However, Mr. Vazquez does not contend, nor would the record before this Court support such a contention, that his physical issues, alone or in combination, rendered him unable to pursue appellate or collateral relief for more than six years. *See Williams* v. *Breslin*, No. 03 Civ. 1848 (RWS), 2004 WL 2368011, at *9 (S.D.N.Y. Oct. 20, 2004) (concluding that "the mere fact that a habeas petitioner 'suffered with physical and mental ailments during the one-year period is insufficient to toll the one-year time period; [the petitioner] must

13

show that these medical problems rendered him unable to pursue his legal rights during the relevant time period'" (quoting *Rhodes* v. *Senkowski*, 82 F. Supp. 2d 160, 169-70 (S.D.N.Y. 2000))).

Similarly, while the Second Circuit has recognized mental health issues as a basis for tolling, the burden remains high:

> Our caselaw has made clear, however, that mental illness does not toll a filing deadline per se; determining whether equitable tolling is warranted in a given situation is a "highly case-specific inquiry." [*Brown* v. *Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002)] (internal quotation marks omitted). The burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the plaintiff; in order to carry this burden, she must offer a "particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights." [*Boos* v. *Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)]. Therefore, in order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an "extraordinary circumstance" severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so.

*Bolarinwa* v. *Williams*, 593 F.3d 226, 232 (2d Cir. 2010). Mr. Vazquez refers to a "mental breakdown that led to psychosis and made me unable to function" (Dkt. #76 at 2), but his conclusory assertions are woefully short on the details to warrant the extraordinary relief of equitable tolling. *Cf. Boyd* v. *United States*, No. 13 Civ. 5572 (BMC), 2013 WL 6081701, at *4 (E.D.N.Y. Nov. 19, 2013) ("To demonstrate grounds for equitable tolling, petitioner must show that after the judgment against him became final ... , he lacked the mental capacity to file this proceeding during at least eighteen of the thirty months that ensued

between the denial of his certiorari petition and the date he commenced this action; that is, there was not an aggregate of twelve months (whether consecutive or not) during the thirty month period during which he had the mental capacity to file this proceeding.").  Indeed, the Court saw Mr. Vazquez on several occasions beginning in August 2019, and observed neither physical nor emotional distress that could be characterized as extraordinary.  The Court also notes that Mr. Vazquez's 2019 PSR contains his statements to the Probation Office that he was "in good physical health" (2019 PSR ¶ 55), and he had sought treatment for mental health issues following the deaths of his father and grandfather for, at most, a four-month period (*id.* at ¶ 56).

In short, Mr. Vazquez has not demonstrated a basis for tolling the six-year period between his conviction in the 2013 case becoming final and his Section 2255 motion.  Accordingly, the Court denies his Section 2255 motion without a full evidentiary hearing.  *See Chang* v. *United States*, 250 F.3d 79 (2d Cir. 2001) (noting that district court may request documentary evidence in lieu of full hearing).[8]

## B.   The Court Grants in Part Mr. Vazquez's Motion for Compassionate Release

Separately, Mr. Vazquez has filed a second, counseled motion for compassionate release, claiming that the health conditions identified in his first compassionate release motion "remain unchanged and that, in some respects,

---

[8]   For avoidance of doubt, the Court observes that even if Mr. Vazquez's Section 2255 motion had been timely filed, which it was not, it would fail on the merits for substantially the reasons identified in the Government's opposition.  (*See* Dkt. #82).

his health has deteriorated." (Dkt. #93 at 1).  With particular respect to health issues that have arisen since the issuance of *Vazquez I*, Mr. Vazquez cites blood in his urine; a CT scan that disclosed a renal cyst; an inability to control his blood pressure despite medication; and several interrelated symptoms suggestive of cardiac problems.  (*Id.* at 1-2).  In addition, Mr. Vazquez notes that while he has taken steps to prevent serious illness were he to contract the COVID-19 virus, including vaccination, he is concerned about a contemplated relaxation of virus policies in May 2023.  (*Id.* at 2).  The Government responds that Mr. Vazquez's medical conditions do not constitute extraordinary and compelling circumstances; that certain of his medical issues have been precipitated or exacerbated by Mr. Vazquez's own dietary decisions; and that he is receiving proper care from the Bureau of Prisons ("BOP").  (Dkt. #94).

The legal standards under which compassionate release applications are analyzed have not changed since *Vazquez I*, and the Court incorporates that analysis here by reference.  *See Vazquez I*, 2022 WL 269149, at *3-4; *see also United States* v. *Needham*, No. 22-253-cr, 2023 WL 2172382, at *2 (2d Cir. Feb. 23, 2023) (summary order) ("A district court may, in an exercise of its discretion, reduce a defendant's term of imprisonment by granting a motion brought under § 3582(c)(1)(A) — the 'compassionate release' provision — if [i] the defendant has exhausted administrative remedies, [ii] a sentence reduction is consistent with the § 3553(a) sentencing factors, and [iii] extraordinary and compelling circumstances warrant a reduction." (citations omitted)).

Taking his arguments out of order, the Court does not believe that the threat to Mr. Vazquez posed by the COVID-19 virus amounts to an extraordinary and compelling circumstance. Comparing the medical conditions identified in Mr. Vazquez's BOP medical records, which have been produced to the Court under seal, with the list of conditions identified by the Centers for Disease Control and Prevention (the "CDC") as conditions known to increase risk of severe COVID-19 symptoms, the Court observes that depression and "possibly" hypertension are listed among those conditions. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Mar. 3, 2023). The Court also notes that Mr. Vazquez has received the COVID-19 vaccine, and that courts in this District have repeatedly found that "the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." *United States* v. *Angulo-Aguirre*, No. 07 Cr. 387-03 (CM), 2022 WL 2156666, at *3 (S.D.N.Y. June 15, 2022) (collecting cases). Finally, the Court has reviewed BOP statistics from FCI Gilmer, the facility at which Mr. Vazquez is currently housed. Of note, FCI Gilmer is currently operating with minimal modifications, and with only three inmates who have tested positive for the virus. *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 3, 2023). The Court finds that Mr. Vazquez has not shown that the

17

COVID-19 pandemic constitutes an extraordinary and compelling basis for his release.[9]

Separate and apart from their potential interplay with the COVID-19 virus, however, the Court is concerned about Mr. Vazquez's current medical conditions.  *See, e.g.*, *United States* v. *Franco*, No. 12 Cr. 932 (PAC), 2020 WL 4344834, at *2 (S.D.N.Y. June 24, 2020) (finding combination of diabetes, hypertension, and obesity to qualify as extraordinary and compelling reason for release from custody).  At the time of his original compassionate release motion, the condition of greatest worry was Mr. Vazquez's hypertension.  (*See* 19 Cr. 540 Dkt. #29).  However, since the issuance of *Vazquez I*, Mr. Vazquez has had multiple episodes of blood in his urine, a renal cyst, an inability to control his blood pressure (for which Mr. Vazquez appears at least partly to blame), heart palpitations, breathing problems, a growing lipoma on the back of his neck, and a mass below his sternum.  (Sealed Medical Records).  The Court has reviewed with care several years' worth of Mr. Vazquez's medical records.  In the Court's estimation, Mr. Vazquez has received appropriate medical care (in terms of both frequency and treatment modalities) at the BOP facilities to which he has been designated.  And yet it remains the case that Mr. Vazquez has chronic medical conditions, several of which have worsened with his continued incarceration.

---

[9]     The same result obtains when considering the contemplated loosening of virus-related restrictions.  The article submitted by the defense indicates that such changes would take place in mid-May 2023, the same month as Mr. Vazquez's currently scheduled release date.

This deterioration of Mr. Vazquez's health dovetails with another concern this Court has recognized in prior cases as an extraordinary and compelling circumstance, namely, that the conditions of his confinement during the COVID-19 pandemic have resulted in sentences that were more severe than Judge Griesa or this Court could have contemplated when originally sentencing him in 2015 and 2020.  While each judge sought to carefully balance the information then available, we could not have foreseen the restrictions that would be precipitated by the pandemic (including lockdowns and curtailment of facility programming and visitation), nor the public health risks faced by individuals like Mr. Vazquez who have spent the entirety of the pandemic in a carceral setting, nor the length of time over which these risks and deprivations would persist.  And in a prior decision resolving a compassionate release motion, the Court recognized "that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.'"  *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); *see also United States* v. *Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While not intended as punishment, incarceration in

such conditions is, unavoidably, more punishing."). In short, the Court has previously concluded, and concludes here, that pandemic-induced conditions of confinement can constitute "extraordinary and compelling" circumstances warranting compassionate release for certain defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic. Here, there can be no serious dispute that, using the metric of his health, Mr. Vazquez has experienced harsher conditions of confinement than could have been anticipated, and the Court finds that the length and totality of these conditions amount to extraordinary and compelling circumstances under § 3582(c)(1)(A)(i). It therefore proceeds to consider whether relief in the form of a reduced sentence is warranted in this case in light of the factors set forth in 18 U.S.C. § 3553(a).

While the issue is a close one, *see Vazquez I*, the Court concludes that the factors set forth in 18 U.S.C. § 3553(a) — which include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant," *id.* § 3553(a)(1), (a)(2)(C) — counsel in favor of a slight reduction in sentence. The Court recalls its analysis of the Section 3553(a) factors from the prior decision:

> Mr. Vazquez has a lengthy criminal history that involves two convictions for fraud, not to mention his repeated refusals to abide by court orders requiring his appearance. And while claiming to have accepted responsibility, and receiving a below-Guidelines sentence from this Court as a result, Mr. Vazquez continues to challenge the Court's sentence in post-conviction proceedings. The Court has given serious

> consideration to the information presented by Mr. Vazquez concerning his clean disciplinary record, his family support, and the likelihood of deportation. However, the latter two factors were considered by this Court and Judge Griesa in imposing sentence, and this Court has concluded that information about Mr. Vazquez's post-surrender conduct and the conditions of confinement during the pandemic does not warrant a further reduction in sentence.

*Vazquez I*, 2022 WL 269149, at \*6.  That analysis remains correct, but it must be supplemented with newer information, including (i) the worsening of Mr. Vazquez's medical conditions, (ii) the fact that Mr. Vazquez has spent an additional 14 months in a highly restrictive carceral setting, and (iii) Mr. Vazquez's revised projected release date of May 24, 2023.  After carefully considering these factors, and understanding that Mr. Vazquez has already served the totality of the sentence imposed in the 2013 case, the Court will reduce the sentence imposed in the 2019 case by two months.

## CONCLUSION

For the reasons set forth above, the Court DENIES Mr. Vazquez's motion pursuant to 28 U.S.C. § 2255.  Because Mr. Vazquez has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c).  The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this portion of the Opinion would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Court GRANTS IN PART Mr. Vazquez's second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), insofar as his sentence in Case No. 19 Cr. 540 is modified to reduce the term of imprisonment on Count One from 8 months to 6 months.  All other aspects of the sentence in Case No. 19 Cr. 540 remain in full force and effect.  The Court does not modify any aspect of the sentence imposed in Case No. 13 Cr. 869.

The Clerk of Court is directed to terminate the pending motions at docket entries 72 and 93 in Case No. 13 Cr. 869.  The Clerk of Court is further directed to close Case No. 22 Civ. 2961.  Finally, the Clerk of Court is directed to enter this Opinion and Order in Case Nos. 13 Cr. 869, 19 Cr. 540, and 22 Civ. 2961.

SO ORDERED.

Dated:   March 6, 2023
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge